UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

EDWIN VELEZ,

          Plaintiff,                        Case No. 1:24-cv-112

v.                                             Honorable Sally J. Berens

MICHAEL BURGESS et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

      Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF personnel in their official and personal capacities: Warden Michael Burgess, Lieutenant Unknown Lofton, and Correctional Officers Unknown Dehl and Unknown Tighe.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff alleges that on October 1, 2022, while incarcerated at ECF, he was placed on suicide watch after having a mental breakdown. (Compl., ECF No. 1, PageID.3.) Plaintiff was taken to the shower area in Unit 5 and directed to turn over his clothing and shoes. (*Id.*) Plaintiff alleges that he was also directed to give a urine sample in the shower area. (*Id.*)

Plaintiff avers that Defendant Dehl "has full knowledge that the shower is unclean to have someone in bare [feet]." (*Id.*) He states further that Defendant Tighe "never interven[ed] to stop the cruel[] mistreatment and provide segregation shower shoes or othe[r] shoe wear gear." (*Id.*) Plaintiff states further that Defendant Dehl "walked Plaintiff around [ECF] Unit 5 barefoot." (*Id.*) Plaintiff alleges that he got a foot rash and athlete's foot. (*Id.*) He was subsequently evaluated by the medical department and prescribed a foot cream. (*Id.*) Plaintiff contends that he "had irritation and smelly feet," and that the ECF quartermaster never exchanged Plaintiff's shoes, so the athlete's food and itch occasionally come back. (*Id.*)

Plaintiff's exhibits indicate that he filed a grievance regarding the issue on October 4, 2022. (ECF No. 1-1, PageID.7.) He alleges that he was interviewed about the grievance by Defendant Lofton on October 21, 2022. (ECF No. 1, PageID.3.) Plaintiff claims that Defendant Lofton told Plaintiff that he would contact medical, but never did. (*Id.*) Plaintiff therefore had to submit a healthcare kite. (*Id.*) Plaintiff faults Defendant Lofton for claiming to investigate his complaint when Lofton in fact ignored it and denied Plaintiff's grievance. (*Id.*) Plaintiff alleges further that Defendant Burgess failed to investigate his complaint and denied Plaintiff's Step II grievance appeal. (*Id.*; ECF No. 1-1, PageID.8.) Plaintiff also faults Defendant Burgess "for not providing his staff with showers shoes for inmates in Unit 5 and not providing staff with proper training." (ECF No. 1, PageID.3.)

Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights. (*Id.*, PageID.4.) He seeks declaratory relief, $75,000.00 in compensatory damages, and injunctive relief in the form of new shoes and provision of shower shoes for inmates in segregation. (*Id.*)

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

5

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Official Capacity Claims

As noted above, Plaintiff sues all Defendants in both their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir.

2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks declaratory and injunctive relief, as well as damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's damages claims against all Defendants in their official capacities.

An official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, however, Plaintiff is no longer confined at ECF. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43

7

(N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is no longer confined at ECF and fails to allege facts that show that he would be subjected to further future conduct by Defendants. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Accordingly, the Court will dismiss Plaintiff's official capacity claims in their entirety.[2]

### B. Personal Capacity Claims

As noted above, Plaintiff contends that Defendants violated his Eighth and Fourteenth Amendment rights by not providing shower shoes to him when he was taken to segregation at ECF.

#### 1. Claims against Defendants Burgess and Lofton

Plaintiff faults Defendants Burgess and Lofton for not adequately investigating his grievances, as well as for denying his grievances, about the shower shoes issue. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information

---

[2] To the extent Plaintiff seeks declaratory and injunctive relief against Defendants in their individual capacities, such claims will also be dismissed for the reasons set forth above.

contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Burgess and Lofton encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff suggests that they failed to investigate and denied his grievances, which is insufficient to impose Section 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff also alleges that, during the interview regarding Plaintiff's grievance, Defendant Lofton told Plaintiff that he would "contact medical but never did so." (Compl., ECF No. 1, PageID.3.) As discussed *infra*, however, "[m]inor skin rashes and other conditions like athlete's foot are not considered to be serious enough to give rise to an Eighth Amendment claim." *See Reitmeyer v. Monroe*, No. 1:19-cv-25, 2019 WL 549058, at *3 (W.D. Mich. Feb. 12, 2019) (citing *Kirkland v. Keeling*, No. 12-15275, 2014 WL 186092, at *3 (E.D. Mich. Jan. 16, 2014)). Moreover, Plaintiff

9

states that he was eventually seen by medical and prescribed a cream for his feet. (Compl., ECF No. 1, PageID.3.) Plaintiff fails to set out any facts from which the Court could infer that he suffered any serious harm from any delay between when Defendant Lofton failed to contact medical and when Plaintiff was ultimately seen. Plaintiff's allegations are simply insufficient to demonstrate that Defendants Burgess and Lofton were personally involved in the events described in Plaintiff's complaint.

Furthermore, to the extent Plaintiff suggests that these individuals violated his rights by failing to investigate or denying his grievances, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, these Defendants did not deprive him of due process.

Moreover, these Defendants did not violate Plaintiff's First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty.*

*Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, these Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff has failed to state cognizable claims against Defendants Burgess and Lofton.

11

### 2. Defendants Dehl and Tighe

#### a. Eighth Amendment

Plaintiff contends that Defendants Dehl and Tighe violated his Eighth Amendment rights by not providing shower shoes when Plaintiff was taken to Unit 5 for suicide watch. (ECF No. 1, PageID.3.) According to Plaintiff, Defendant Dehl "has full knowledge that the shower is unclean to have someone in barefoot." (*Id.*) Plaintiff alleges that Defendant Dehl also "walked Plaintiff around the [ECF] Unit 5 barefoot." (*Id.*) Plaintiff contends that he got a foot rash and athlete's foot, which medical treated with a prescribed cream. (*Id.*)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

While the Court is sympathetic to the fact that Plaintiff contracted athlete's foot and a rash, his allegations do not suffice to rise to the level of an Eighth Amendment violation. Plaintiff vaguely states that the shower area was unclean but provides no facts to support his assertion. Moreover, as noted above, "[m]inor skin rashes and other conditions like athlete's foot are not considered to be serious enough to give rise to an Eighth Amendment claim." *See Reitmeyer*, 2019 WL 549058, at *3 (citing *Kirkland*, 2014 WL 186092, at *3). Plaintiff, therefore, has not sufficiently alleged that he was "incarcerated under conditions posing a substantial risk of serious

13

harm." *Farmer*, 511 U.S. at 834; *cf. Reitmeyer*, 2019 WL 549058, at *3 (noting that possible exposure to fungus and black mold in the showers did not rise to the level of an Eighth Amendment violation).

With respect to the subjective prong, Plaintiff alleges no facts that would permit the Court to infer that Defendants Dehl and Tighe were aware of any substantial risk of harm to Plaintiff and disregarded that risk. Although Plaintiff vaguely states that Defendant Dehl "has full knowledge that the shower is unclean to have someone in barefoot," (ECF No. 1, PageID.3), Plaintiff provides no facts about the state of the showers when Defendants Dehl and Tighe escorted him there for purposes of placing Plaintiff on suicide watch. Plaintiff's allegations suggest nothing more than that Defendants Dehl and Tighe possibly could have been negligent by placing Plaintiff in the shower barefoot. However, allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

At most, Plaintiff has alleged a temporary inconvenience, which does not suggest that the condition complained of fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). Plaintiff's Eighth Amendment claims against Defendants Dehl and Tighe will, therefore, be dismissed.

b. **Fourteenth Amendment**

Plaintiff also contends that the failure to provide shower shoes violated his rights under the Fourteenth Amendment's Due Process Clause. (ECF No. 1, PageID.4.) The Court construes Plaintiff's reference to the Fourteenth Amendment to assert a substantive due process claim.

14

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Here, Plaintiff fails to allege facts from which the Court could infer that Defendants Dehl and Tighe (as well as Defendants Burgess and Lofton) engaged in conscience-shocking conduct.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to protect Plaintiff's rights to constitutional conditions of confinement. Accordingly, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   March 5, 2024                          /s/ Sally J. Berens
                                                SALLY J. BERENS
                                                United States Magistrate Judge